May it please the court, Lawrence Rolfing on behalf of Cynthia Carrillo-Yeras. This case has two components. One is a legal claim that the Commissioner ran out of time to reopen and revise an administratively final determination that was entitled to administrative res judicata effect. And the other claims are that the ALJ failed to properly assess Ms. Yeras' residual functional capacity by improperly rejecting the opinions of three physicians and improperly rejecting her own testimony when the medical expert whom the ALJ credited said that failed back syndrome is likely to have pain without neurological findings. On the first claim, the timeline is important. The administrative law judge in this case issued his first decision in March of 2003. And at that time, the administration allowed claimants to immediately reapply for benefits and appeal the adverse administrative law judge decision. And Ms. Yeras did that. The agency granted the subsequent claim on August 19, 2003, and she began to receive benefits. Almost a year later, in June of 2004, the Appeals Council announced its intention to reopen the August 2003 claim and to vacate the ALJ decision of March of 2003. The Appeals Council invited the representative that Ms. Yeras had at that time to comment. He did not comment. Three months later, the Appeals Council issued its order vacating the ALJ decision, reopening the subsequent grant, and sending the case back. Okay. What is it that triggers the six-month presumption? Well, since the Appeals Council reopened for under the any reason within 12 months for any reason, the only statement of the Appeals Council that would trigger that within the 12 months would be the June 2004 announcement of intention to reopen. That's what starts the six-month clock. All right. So by December of 2004, if the decision had been made before December of 2004, then there wouldn't be any problem. The problem is that since it came after that, the question was whether the what's the term, due diligence or no? Correct. Yeah. You have to be diligent in the pursuit of the claim. Right. Okay. The administrative law judge waits eight months to schedule an exam, four months to schedule an exam, six months to have a hearing, and then issues a decision two months. Then we're 23 months after this June of 2004. And the government argues that when the Appeals Council gave reasons for its reopening, its view of the evidence and its concerns, that that is an articulation of good cause that invokes the two-year time limit for SSI claims and four-year time limit for Title II claims. But the regulations don't allow the agency to reopen a claim for no reason, just any reason. And the statement of reasons is just that, a statement of what the reasons are. And under Ventura, we don't give the agency extra reasons. We don't make findings of fact on behalf of the agency. And if the agency refrained from articulating good cause, then this Court should not assume that the agency intended good cause. My impression is that the agency probably was within its rights to try to reopen it. They just didn't do it in the requisite time. Would that be a fair way to characterize your view of it? That is the correct way to characterize it. Okay. The district court says, well, there's evidence in the record to show that they were diligently pursuing it. And then the magistrate judge rattles off his explanation for why. What's wrong with his analysis? Well, first of all, the magistrate judge is articulating reasons that the agency didn't articulate. And that violates not only Ventura, but also SEC versus Chenery. Let me stop you there. Is there anything in the regs that require that they specifically find that they diligently pursued it? Or is it enough that they do it implicitly? Well, that's the ambiguity of the regulation. The regulation requires them to be diligent, and that diligence is presumed within six months. And if it's more than six months and the agency hasn't been diligent, then reopening can only be in favor of the claimant for benefits. And that's the ambiguity. In the subregulatory promulgations, the agency says the burden of showing diligence is ours. The burden of articulating diligence is ours. And it isn't just in a stray, offhand manner. It's in several different HalEx and HOMS provisions. And because those provisions construe the regulation, and you and I are questioning how do we show diligence and how do we assume diligence and can we just put our hand on the record and say, well, it looks like diligence, those interpretations of the Title II and the Title XVI regulations are entitled to controlling deference. And they're entitled to controlling deference because our and CORE Alaska and all of the other cases on deference to agency interpretation of its own regulations are correct and they apply in this circumstance. An agency ought not run away from its own interpretation of its own regulations. There's a couple cases, and the Commissioner cites the most problematic case for me as PARA. In PARA, the attorney argued that the emergency teletype on drugs and alcohol was entitled to be followed. It didn't invoke our, but just that it ought to be followed as an interpretation of the statute. But we know that subregulatory promulgations interpreting statutes are not entitled to our deference. They're entitled to Skidmore deference. And so PARA, as a construction of the statute, PARA is correct, but it doesn't apply here because here we're construing the regulation. In Lockwood v. Astrey, the case that was decided about a year ago, this Court found that a POMS provision was not entitled to deference because it conflicted with a specific PALEX provision and the Court assumed, and it's clear in the decision that the Court assumed, that that POMS provision had expired and was obsolete. And so we had an intact POMS provision, PALEX provision, and an expired POMS provision that were in conflict. And the Court said, we'll make up our own decision on the power to persuade. We don't have that problem here. None of the subregulatory promulgations interpreting the two regulations are in conflict in this case. And the importance of administrative res judicata and respecting the finality of administratively final decisions is reflected in this case. If one were to take the view that the testimony of Dr. Brown, who's a board-certified internist, or the testimony of Dr. Hyde, or the opinions of Dr. Mays or Dr. Hanani were substantial evidence, we clearly have substantial evidence on the other side. Dr. Havens, Dr. Zuckerman, Dr. Rowe, Dr. Mitts, Dr. Furtick, Dr. Spoonemore, all of these physicians are, except for Dr. Mitts, are treating physicians. And clearly a reasonable person could say, well, I believe Dr. Havens, Zuckerman, and Rowe. And what the agency is doing is allowing the ALJ to substitute his judgment for that of an administratively final decision when he didn't comply with the regulatory paradigm for reopening and revising as a separate component. And it's because those physicians, Havens, Zuckerman, Rowe, Spoonemore, and Furtick, are treating physicians, the case law in this circuit, starting with Murray v. Heckler, and the regulations which were promulgated after Murray was decided, tell us that the agency has to put its thumb on the scale in favor of the treating physician's opinions. And Universal Camera, Reddick v. Chater in this circuit, tell us that we look at the record as a whole. And so we have these physicians that have treated Mrs. Yarris over the entire eight years at issue here. Havens, Zuckerman, Rowe, Spoonemore, Furtick, they're all coming to similar conclusions about Cynthia Carrillo-Yarris' residual functional capacity, her ability to engage in work activity, without colluding together, without consulting with one another, but based upon their own independent evaluations. And yet the ALJ prefers the opinion of Dr. Brown, some support with Dr. Height, when that physician never examined the claimant. And to defer to the non-examining physician when we have serial, independent looks, confirming that this woman cannot engage in full-time work activity, that would amount to substantial gainful activity, is plain error. And when Dr. Brown concedes in his testimony that, well, failed back syndrome, you wouldn't normally have neurological findings, but the person would still have a lot of pain, and I'm paraphrasing, of course. And the ALJ says, well, I'm going to reject Mrs. Yarris' testimony because she didn't have neurological findings. That isn't a legitimate articulation. It isn't based on the evidence that's before the ALJ. It's taking something out of context and saying, well, I don't have neurological findings. They must not have pain. Let me ask you, if we agree with you that the ALJ didn't act quickly enough, didn't act within the requisite time and didn't explain why he didn't act within the requisite time, what would we do? We would reverse the district court, which affirmed the ALJ's award. So then what would happen? We would order the award of what date to be reinstated or what? We would order the determination of August 19, 2003 to be reinstated. And now if the agency decides it wants to once again reopen it, they can start that all over again, I take it. Is that right? They don't think she's disabled anymore or whatever. They can initiate a continuing disability review. I think the time in which to reopen that determination is long since expired. It's been eight years. That's the August of 03. Right. But if they think she's had a miracle or something. If she's been to Lourdes, France, they can start a continuing disability review and say she's not disabled. If she's no longer disabled, they're off and running again. That's correct. It does not tie the agency's hands at all. Gotcha. I'll reserve my remaining three and a half minutes. Just a quick follow-up on that, is there an interval or an opportunity for the BIA to make the requisite findings? If we send it back under Ventura, can they make the requisite findings with respect to due diligence and leave the rest of it the way it is? Is that an option? I'm not saying it should be. I'm just asking a question. On behalf of Mrs. Jarosz, I would argue that the time to do that has long expired. All right. I understand that argument. All right. Thank you. Thank you. Thank you. Good morning, Your Honor. Scott Barman for the Commissioner of Social Security. May it please the Court. I'd like to jump right into the chronology discussion that the bench was having with Mr. Rawlton because I think it's important. Referring to page 283 of the Administrator Record, this is the notice reopening the decision. Mr. Rawlton characterized it as intent to reopen. What the Appeals Council said, and this is the June 2004 notice, is we are reopening the favorable determination. And then it said what we're going to do is we're going to receive additional information from you if you decide to send it in and then remand it to an ALJ for investigation. The way that that works under the regulations is the Appeals Council can review any decision within six months on its own review or in response to a timely filed petition for review. If it's after those first six months, it can reopen a decision for any reason within one year. That's what happened here. Once a case has been reopened, it's investigated. And if it's investigated timely, then it can be revised, reopening. So it's the reopen, investigate, revision process that set it in the regulations. The June 2004 notice reopened it. The Appeals Council said it's part of the investigation. You can submit more to us. It went back to the administrative lodges with specific instructions on things that the ALJ was to do. And ordinarily, it should be six months from that point to get a decision. Is that right? That's the presumption of diligent pursuit. If we are able to get a decision done within six months, then the regulatory presumption is that, yes, we're going to do it. And in this case, it was more like two years, and no finding by the ALJ that there's a good cause for that. Correct. There was no specific magic words finding by the ALJ that I find there was diligent pursuit because of X, Y, and Z. But the ALJ did describe in the decision the remand and the instructions from the Appeals Council to gather specific evidence. And the process of setting is appointments for consultative examinations and then holding another hearing. Just very briefly, the timeline. Yeah, but you're saying he described what happened but made no value judgment, no findings. Correct. And the regulations don't require that there be a specific finding saying I find diligent pursuit because of. To quickly address the point of the sub-regulatory materials. Let me ask you, what should our standard of review be at that point? Once it's out of HHS, what's our standard? How do we approach that diligent pursuit issue? The regulations require that diligent pursuit be reviewed based on the facts and circumstances of the particular case. And it's our position that the facts and circumstances of a particular case should be reviewed based on the facts and circumstances of a particular case. So subject to the same review that this Court normally engages in. But if the rules are that six months is a presumption, yet in this case it was over two years, couldn't the Court, our Court, or at least the district court conclude, well, that's not diligent pursuit? Yes. But what's the test? That's one of the, it isn't set, the specific test is not set out in the regulations. Because by focusing, and really by eschewing a specific test and eschewing specific requirements, the regulations require a particularized individual analysis of each case. And that's exactly what the district court here did. And so the district court reviewed what happened. And by way of background, the order of remand came from the Appeals Council in September 2004. In December 2004, the ALJ requested new medical release forms. That's on page 281. The ALJ started receiving new medical records, including a lot of what we talk about in the treating physician part of this argument. In April of 2005, the ALJ requested that the State Disability Determination Service set up the consultative examinations that had been ordered by the Appeals Council. Those examinations took place in June and September of 2005. In February of 2006, the ALJ noticed, had finally received all the records, noticed a hearing, sent the records to Dr. Brown, and then held the hearing. Within three months of the hearing, the ALJ issued a decision, and the district court, in our view correctly, viewed all of those factors as sufficient for purposes of diligent pursuits. I've been reflecting on your last answer to my question. Suppose the district court came out the other way and said there was no diligent pursuit and it was not undertaken and carried out as promptly as the circumstances permitted. What would your argument be to us at that point? In other words, they ruled against the agency. It would depend entirely on whether it was based entirely just on the regulations or if there was consideration of the sub-regulatory materials as well. If it were just based on the regulations, I don't know how I would be arguing it. Okay. And the answer is, and I think it's important to go back to, the sub-regulatory materials at issue are directed to different components of Social Security. HALEX, as this court has previously addressed in the Moore decision, HALEX is for the hearings and appeals process. POMS is for field office employees. They're directed to entirely different parts of the agency that don't overlap. And so if the district court were to find that the ALJs are bound by instructions, employee manuals to a part of the agency that the ALJs normally never interact with, that would be a real problem. We would argue that the court should take the very same position that it's taken in Lockwood, in Lowry, in Moore, really in all the cases that say POMS and HALEX do not create judicially enforceable remedies. Were the district court or indeed this court to make its conclusion based entirely on the regulations, I'm not sure what I'd argue, honestly. Can I ask you a question, the same thing I asked Mr. Rolfing? If we were to agree with him that, for whatever reason, the diligent pursuit hasn't been either established or found, however we were to deal with that, they win, you lose, what would our options be? Would we then reinstate the order of August 19, 2003? Is that the way it would work? Yes, that is the way that it would work. Just for the August 2003 claim, there is the prior application for benefits. That would not be reinstated because that was handled under the different review process. Because what happened is the claimant applied for benefits in May 2000, that went to hearing before an ALJ and was denied. After that denial, she filed the claim that was then resulted in the favorable determination. They were consolidated on remand to the ALJ after the Appeals Council got involved. But it would be inappropriate to you couldn't reinstate a prior favorable decision because there wasn't one for the first part of that. So the August 19, excuse me. Go ahead. So where does that leave us? I think it's his question. Right. Where does that leave us? There would have to be, assuming that I lose everything, the August 2003 case could be reinstated. The May 2000 application. Excuse me. You said it could be reinstated. Is that what you said? Yes. Correct. The February 2003 ALJ decision would need to be remanded for further proceedings because it was a Step 4 decision, so there was no Step 5 findings. Which order was that again, the February? February 2003. I'm sorry, March 2003 was when the ALJ made that decision. And that would be remanded. And the reason for that is really articulated in the recent Strass decision where this court can remand for payment only where disability can clearly be found. If the diligent pursuit were not deemed to be sufficient as a matter of administrative Mr. Rolfing is correct that we do have the continuing disability review process, but that is not implicated in the current case. So with respect to the March 2003 remand, it would be remanded for what? What would happen upon remand, or what are the options on remand? Further proceedings. This was a Step 4 decision, meaning based on the testimony of the vocational expert, the administrative law judge found that the claimant could return to her past relevant work. If that were found to be insufficient, the ALJ should be given the opportunity to address whether there is any other work in the national economy that the claimant is capable of performing. And that would be based on the medical expert, the residual functional capacity assessment. I'm going back to the favorable decision. She had a favorable decision, I think. It was earlier in 2003, isn't that right? Correct, in August 2003. In August of 2003? August of 2003 was when the State Disability Determination Service approved the second application. All right. Well, that's the one that we could affirm in effect. In other words, that's the one that would be reinstated if we found that there was a failure of diligence. Correct. All right. Correct. If there aren't other questions on the reopening revision process, I'd like to move into the residual functional capacity assessment that Mr. Rolfing addressed. As presented in the briefs, there's two arguments. First, that the ALJ improperly rejected the opinions of certain medical doctors but not other medical doctors. This is really a great case for why testifying medical expert is appropriate. What Mr. Rolfing has sort of alluded to is the doctors reached similar but overlapping and in some ways differing opinions. And the ALJ appropriately called a medical expert, Dr. Brown, to testify about all of the medical records in the case and how to resolve them. This court's decision in Birch v. Barnhart is entirely clear that when the evidence is subject to multiple rational interpretations, the ALJ's interpretation must be upheld. Must be. And in this case, because there was inconsistent medical records from Dr. Havens, from Dr. Zuckerman, from Dr. Rowe, from the consultative examiners, Dr. Hanani and Dr. Mayes, the ALJ appropriately relied on the testimony of a medical expert to help them sort through all of the slightly overlapping opinions. That was entirely appropriate. With respect to credibility, the ALJ, again, relied heavily on Dr. Brown's opinion with respect to medical evidence and on the claimant's activities of daily living. It's important to note, this is from the opinion, the ALJ found that the activities of daily living, including driving her son, caring for personal grooming, cooking for herself and her then six-year-old, do not seem inconsistent with the residual functional capacity for sedentary work. That's important because what the ALJ found the claimant could do was lift and carry ten pounds occasionally and ten pounds frequently, stand and walk for two hours, sit for six hours, occasionally climb, balance, stoop, kneel, crouch, crawl, avoid heights, avoid dangerous moving machinery, and never drive commercial vehicles. That's already a restricted range of sedentary work under the regulations. And so the ALJ cited sufficient reasons for finding that the claimant's testimony was consistent with the residual functional capacity assessment. I see I have just a minute left. If there are any other questions, I'd be happy to address them. No further questions. Thank you, counsel. Mr. Rolfing, you have some reserved time. Thank you very much. One question. Do you agree that it's the August 03 award that would be reinstated if we agree that there was no diligence? That's correct. All right. Thank you. Is there anything we should do with the March 2003 step 4? What would be the May 2006 decision, the current final decision of the commissioner, that would be subject? And that one should be remanded for that prior period. May 16, 2006? Yes. For further proceedings? Yes. Is that because we're talking about different time frames or are these different claims based on different? Once the court agrees that there was no diligence, then the ALJ's decision becomes fractured. And we have this piece based on the August 2003 determination that's final. That pays benefits until there's a continuing disability review. And so then the ALJ needs to make a discrete set of findings for the period 1999 to 2003. And his decision is infirm because it didn't just consider that. So, again, I don't want to confuse these folks. If we agree with you, we send it back. They're not going to know what the hell to do. I just want to make sure I understand. We would order the August 19, 2003 decision reinstated. We would remand the May 16, 2006 decision for further proceedings. It was a blank. To have the ALJ address the earlier period, not covered by the August 2003 determination. And the August 2003 determination was with respect to which period again? From April of 2003 forward. Forward, okay. So we're talking about a four-year period that's at issue? That's correct. Unless the Court has any additional questions, I'll yield my 45 seconds. Thank you. Thank you, Counsel. I probably owe the Court a lot more time anyway. Yes, okay. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn. Yes, we agree. Both having had business before this Honorable Court, the United States Court of Appeals for the Ninth Circuit, shall now depart for this Court. Now stand adjourned.
judges: Alarcon, O'scannlain, Silverman